JOHN JOHNSON, PLAINTIFF IN ERROR, v. LEWIS W. PARROTTE AND MARCUS L. PARROTTE, DEFEND-ANTS IN ERROR.

1. Petition examined, and *Held*, To constitute a cause of action.

2. Trial: FINAL JUDGMENT: STIPULATION FOR REVIEW IN SUPREME COURT. The decision of the district court in sustaining a motion for a new trial after a cause has been tried to a jury and verdict returned, is not a subject of review until after a final judgment is rendered in a cause. (*Artman v. West Point Manufacturing Co.*, 16 Neb., 572.) But where after verdict, and

pending a ruling of the court upon a motion for a new trial, it is stipulated that the ruling of the court thereon may be reviewed by the supreme court, without reference to a subsequent trial, and that in case a new trial is refused upon review by the supreme court, the decision of the district court is affirmed, the cause shall be dismissed ; or in case a new trial is granted, and upon review the order should be set aside and a judgment absolute rendered in the supreme court for the amount of the verdict, the. supreme court will. be governed by the stipulation, review the case, and render such judgment as the district court should have rendered.

3. ———: ———: ———. In such cases, the recognized rule, that in deciding the motion for a new trial the ruling of the district court will not be molested, unless there is an abuse of discretion does not apply with its usual force, and the supreme court will examine the case, in the exercise of the jurisdiction conferred by the stipulation, without reference to, such rule.

4. ———. The rule, that a trial jury must be the sole judge of questions of fact, where the testimony is contradictory, adhered to.

ERROR to the district court for Buffalo county. Tried below before HAMER, J.

*A. H. Connor* and *Hartman & Dryden,* for plaintiff in error, argued the cause upon the facts alone.

*Calkins & Pratt,* for defendants in error, on insufficiency of petition, cited: Boone's Code Pleading, Sec. 24. Maxwell's Pl. and Pr., 236. On granting new trial, cited: *Sedan v. Church,* 29 Kas., 190. *Sang v. Beers,* 20 Neb., 365.

REESE, CH. J.

This was an action by plaintiff in error for damages, growing out of the alleged misrepresentations by defendants in error as to the quality of a number of sheep traded by them to plaintiff in error. It is not quite clear as to whether plaintiff in error, by his petition, sought to charge a fraudulent transaction on the part of

defendants in error, by a false representation as to the
quality of the sheep, or whether the action was intended to
be for a breach of warranty. It is alleged in the petition
that prior to the transaction the plaintiff was the owner of
the north-east quarter of section thirty, in township nine
north, of range seventeen west, in Buffalo county, and also
that he held railway contracts on the north-east quarter of
the north-west quarter, and the west half of the north-
west quarter, and the north-west quarter of the south-west
quarter of section twenty-nine of the same township and
range; that on the 27th day of September, 1883, the
value of the real estate was $4,288.75, over and above the
amount due the railroad company on the contracts referred
to; that on that date the defendants in error were the
owners of a large number of sheep, which they proposed
to trade for the land, and as an inducement to the plaintiff
in error to make the trade, represented to him that the
sheep were healthy and entirely free from the disease gen-
erally known as the scab; that plaintiff informed defend-
ants that he would not trade for the sheep unless they
were entirely free from such disease, and that in reply de-
fendant stated and represented that said sheep were healthy
and entirely free from the disease mentioned; that relying
upon the statements and representations of defendants, as
to the condition of the sheep, the trade was made, plaintiff
receiving 1,468 sheep, at the value of $2.50 per head, ag-
gregating the sum of $3,670, and 495 lambs, estimated at
$1.25 per head, aggregating $618.75, the total value of the
whole being $4,288.75.

It is alleged that the sheep were not healthy, but at the
time of the trade were sick and diseased with the scab;
that after taking the sheep into the possession of the
plaintiff, and believing them to be sound and healthy, he
sold 666 head thereof for the sum of $1,765.90, and 160 head
for the sum of $424, but that said sheep proving to be
diseased, he took them back, or so many as were living,

and returned to the purchasers their notes executed to him for the purchase price; that out of the entire number of sheep received from the defendants, 1,100 died with the disease mentioned, and that the sheep were afflicted and diseased before and at the time of the exchange, and were lost by death; that if they had been healthy, as represented by defendants, they were very well worth $2.50 per head. It is further alleged that plaintiff undertook to heal and cure the diseased sheep, and was to great expense in feeding and caring for them, and spent thereon the sum of $1,385, which was lost to him, which would not have been expended by him had not the defendants falsely and fraudulently imposed said sheep upon him, as alleged in the petition. It is further alleged, that relying upon the representations of the defendants as to the quality of the sheep, he allowed them to become intermixed with his own flock, and lost, of his own flock, sheep of the value of $192.50; that in addition to the expenses paid out and lost by him in caring for the sheep he was obliged to provide extra help, on account of the extra work in caring for those that were diseased, which was of the value of $150, over and above what would have been necessary had the sheep been sound. A judgment of $4,-479.50 is demanded as the damages.

The answer of defendants admits the contract and exchange of property; alleges that the contract was in writing and in the following language:

"KEARNEY, NEB., Sept. 25th, 1883.

" The following contract made between J. Johnson and Parrotte Bros., in which J. Johnson agreed to exchange 320 acres of land, with all improvements, for sheep, at $2.50 per head, 160 acres to be deeded land and 160 is partly paid up R. R. land. The sheep to be sorted by Johnson, out of 2,000 head, taken as they run out of the corral, not counting lambs. Also to take the lambs at $1.25 per head, unless otherwise decided. The exchange

to be made in four days, Parrotte Bros. agreeing to assume back payments on land. J. Johnson to secure Parrotte Bros. against $300 indebtedness, made by Geo. D. Aspinwall."

It is alleged that, in pursuance of and in fulfillment of said contract, and not otherwise, an exchange was made; that plaintiff had full opportunity to inspect and examine the sheep, and did so inspect and examine, both before and after making the contract. They deny the representations, alleged to have been made as to the health of the sheep; allege that if the sheep became or were diseased, they became so after the contract was made, and after delivery to plaintiff. All other allegations in the petition are denied.

By the reply it is alleged that, after the written agreement mentioned in the answer had been entered into, and at the time the sheep were being selected by the plaintiff, plaintiff discovered that one or more of them had the appearance of being diseased with the scab, and that he then called the attention of the defendants to the fact, and refused to proceed with the trade, whereupon defendants stated and affirmed the fact to be, that the sheep mentioned by him, then being inspected, did not have the disease named, but that what appeared to be such was caused by being scalded in dipping, and that all the sheep were free from the disease. Plaintiff, relying upon such statements then made, and believing the sheep to be sound as represented, proceeded to select the sheep and consummate the exchange. The allegation, that the exchange was made in pursuance of the written contract, is denied, as well as the allegation that the sheep contracted the disease after they were delivered to plaintiff.

A jury trial was had which resulted in the return of a verdict in favor of plaintiff for the sum of $981.50. Defendants then filed a motion for a new trial. Pending the motion for a new trial, the following stipulation was entered into by the parties to the action: "It is hereby stipulated and agreed by and between the parties, that if

the court shall grant a new trial herein, then that said plaintiff may review said order granting a new trial, by petition in error to the supreme court, and that if said supreme court shall affirm said order granting a new trial, that judgment absolute shall be rendered against the plaintiff, dismissing his action with costs. But if the said supreme court reverses said order, then that judgment absolute shall be rendered against defendants for the amount of verdict and costs."

A new trial was granted, but for the purpose of reviewing this order error is presented by the plaintiff in the action below. By the stipulation above copied, it is apparent that both parties desired to avoid the expenses and vexation of another trial, and that the litigation shall be brought to a speedy termination. We are therefore inclined to examine the question presented by petition in error, to render final judgment notwithstanding the fact that in the absence of such stipulation we could not do so. *Artman v. West Point Manufacturing Co.,* 16 Neb., 572. All questions of jurisdiction being waived, and such jurisdiction being specifically granted by the stipulation, we will try to ascertain whether or not the district court erred in setting aside the verdict of the jury. Under this no notice can be taken of the errors alleged to have been made against plaintiff in error prior to the ruling on defendant's motion, as plaintiff in error stipulated to accept a judgment in his favor on the verdict of the jury. The motion for a new trial was based upon the following grounds:

"*First.* That the damages were excessive and appear to have been given under the influence of passion and prejudice.

"*Second.* That the verdict is not sustained by sufficient evidence.

"*Third.* That the verdict is contrary to law.

"*Fourth.* That the court erred in admitting any evi-

dence, for that the petition does not state facts sufficient to constitute a cause of action.

"*Fifth*. That the court erred in admitting evidence of facts not pleaded.

"*Sixth*. That the court erred in admitting improper evidence offered by the plaintiff and objected to by the defendants.

"*Seventh*. That the court erred in rejecting competent and relevant testimony offered by the defendants and objected to by the plaintiff.

"*Eighth*. That the court erred in refusing the first instruction asked by the defendants.

"*Ninth*. The court erred in refusing the second, third, fourth, fifth, sixth, seventh, and eighth instructions asked by the defendants.

"*Tenth*. That the court erred in giving the first, second, third, and fourth instructions asked by the plaintiff.

"*Eleventh*. That the court erred in giving the first instruction given on its own motion.

"*Twelfth*. Misconduct of the counsel of the plaintiff in making improper statements to the jury, objected and excepted to by the defendants at the time."

In the examination of the case we will follow the brief of defendant in error, rather than the motion for a new trial, for the reason that by the brief the questions are condensed and somewhat consolidated, and much time will thereby be saved.

It is insisted that in the ruling of the district court on the motion for a new trial, the court acted in the exercise of a sound legal discretion in making the order, and that the appellate court will not reverse the ruling, unless there was an abuse of such discretion. While this is conceded to be the ordinary rule, yet we must not lose sight of the stipulation, by which, alone, we are authorized to examine the case to any extent. In the absence of such stipulation it would be presumed that, while plaintiff's right to re-

cover might be held in abeyance until another trial, yet if
such right existed it could be as fully and clearly estab-
lished in a subsequent as on a previous trial, and there-
fore much latitude must be allowed to the district court in
its rulings upon motions of this kind.  But by the stip-
ulation the ordinary rules of practice in such cases are set
aside, and the cause submitted virtually upon the plead-
ings and evidence upon which the case was submitted to
the jury, and we think we are called upon to review the
case, ignoring to some extent the rule contended for.

It is next insisted that the petition did not contain suf-
ficient to constitute a cause of action against defendants in
error, and that by it alone sufficient is shown to warrant
the court in setting aside the verdict.  The principal ob-
jection to the petition is, that it contained no direct allega-
tion of intent or purpose on the part of defendants to
mislead plaintiff by false representation as to the quality
of the sheep.  In other words, that no *scienter* is pleaded.
Although the petition is somewhat unskillfully drawn,
yet we think there is enough stated to sustain a verdict in
plaintiff's favor.  A motion for a more specific statement
would doubtless have been sustained, and plaintiff would
have been required to allege with more exactness the
nature of his claim; whether based upon fraud, or breach
of warranty as to the quality of the sheep.  In the absence
of such motion, a demurrer could not have been sustained
to the petition.  It is alleged that the defendants, on re-
peated occasions, represented the sheep to be sound ; that
plaintiff relied upon such representations; that the sheep
were not in the condition represented, and thereby plaint-
iff was damaged.

The answer set up a written contract embodying the
terms of the transfer, and alleged that the contract was in
writing, a copy thereof being set out in the answer.

To this a reply was filed, admitting a written contract ;

but averring that after its execution, and while the sheep were being transferred to plaintiff, plaintiff discovered what he supposed to be evidences of the disease known as the scab, and refused to proceed further; but that defendants sought to explain the appearance by stating that the sheep, showing what appeared to be evidences of disease, only showed the effects of being scalded while being dipped on a previous occasion, and reasserted and averred freedom from disease; whereupon the plaintiff accepted them. The written contract, being hereinbefore set out, need not be recopied.

It will be seen that no reference to the quality of the sheep is made in the contract. It would, therefore, have been competent for plaintiff to prove representations of quality, the same as if no memorandum had been made. But even though that were not the case, it may be proven under the allegations of the reply, which tend to some extent to avoid the force of the writing.

It is further contended that the verdict was not sustained by the evidence. Upon this point, in view of the great length of the bill of exceptions, the number of witnesses examined, and the extent of the examination of each witness, it would be wholly impracticable to set out the testimony of the witnesses, or a synopsis of the evidence; and it must be sufficient to say that we have carefully read all the testimony, and find it conflicting on almost every material proposition. Taking the testimony of plaintiff and his witnesses, alone, we think it quite clear that there would be enough to sustain the verdict. While, if we adopt the testimony of defendants and their witnesses, it would be equally clear that the verdict could not stand. Upon this conflict it is the province of the jury to decide, and their decision cannot be molested; and upon this part of the case we need not inquire whether the testimony shows an intentional fraud or not. It followed the

allegations of the petition, in all essential respects, which we have seen, under the liberal provisions of our code, constituted a cause of action. Neither is it necessary that we should inquire as to whether the rules of evidence would demand that the proof should show that the alleged representations were made in respect to an ascertainable fact, as distinguished from a mere matter of opinion. There is some evidence tending to show the direct representation that the sheep were sound and entirely free from the disease mentioned, while upon the other hand there is evidence tending to show that they were diseased at that time, and that plaintiff relied upon the representations when he made the trade. It is insisted by defendants in error that the assertion as to whether the sheep were, or were not, inoculated with the disease, was necessarily a matter of opinion. While this is true in one sense, yet in another sense it is not. It was, perhaps, a matter of opinion with plaintiff at the time he made the purchase; but this opinion was based more upon the representations of defendants, than upon his examination of the sheep at the time of the trade. But it is sought to be shown by him that, at the time of the purchase, his own sheep were healthy and entirely free from the disease, and that he had taken such precaution as to wholly eradicate it from his flock and farm, if it had existed there. If this was true, and of its truth the jury were the sole judges, and if it was true, as testified by plaintiff, that there were evidences of scab in defendants' flock, but which they sought to explain away, and this evidence actually developed into the disease, which was communicated to the remainder of the flock and to his own sheep, then it would become a question of fact, to be demonstrated to a degree of more or less certainty. And this, too, was for the jury to determine.

The judgment of the district court must be reversed, the motion for a new trial overruled, and judgment rendered

in this court upon the verdict of the jury for $981.50, which is done.

JUDGMENT ACCORDINGLY.

THE other judges concur.